IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SUSAN I. MOSS and JAMAL S. YANAKI, Plaintiffs, vs. HEINZ KOPP, KENDRA HERLIN, AARON D. KENNARD, SOLELY IN HIS CAPACITY AS SHERIFF OF SALT LAKE COUNTY, and SALT LAKE COUNTY, Defendants. | ORDER AND MEMORANDUM DECISION Case No. 2:06-CV-317-TC |

These alleged violations of civil rights arising under 42 U.S.C. § 1983 come before the court on separate Motions to Dismiss by Defendants Salt Lake County, Aaron Kennard, Heinz Kopp, and Kendra Herlin (collectively "Defendants"). The motions have three bases. First, Defendants have asserted that this action is barred by collateral estoppel. Because Plaintiffs Susan Moss and Jamal Yanaki brought a similar action against parties not named in this lawsuit, Defendants argue that the relevant issues have already been litigated. Second, Defendants contend that quasi-judicial immunity protects them from liability because they acted pursuant to a facially valid court order. Third, Defendants argue that even if quasi-judicial immunity does not apply, qualified immunity shields them from liability.

For the reasons described below, the court grants Defendants' Motions to Dismiss. Specifically, the court holds that: (1) collateral estoppel does not bar this litigation because the

issues presented here differ from the previous proceeding; (2) quasi-judicial immunity does apply and bars this action; and accordingly, (3) the court need not address qualified immunity.

## BACKGROUND[1]

In an unrelated civil action, Iomed, Inc. ("Iomed") sued Jamal Yanaki and others in Utah State Court several years ago.  To facilitate that proceeding, upon an ex parte motion by Iomed, the Honorable Tyrone E. Medley issued an "Order to Conduct Immediate Discovery to Prevent the Destruction or Alteration of Evidence" ("Discovery Order").[2]  The Discovery Order directed Yanaki not to alter certain documents and media, and ordered local law enforcement to take specific items from Yanaki's residence that were in his custody, control, or possession. (Discovery Order at ¶¶ 2, 3.)  Specifically, Judge Medley ordered the "Salt Lake County Sheriff's Office, or other appropriate law enforcement agency as specified by the Court" to take computers, ZIP drives, CD ROMS, a Palm Pilot, as well as files relating to Ceramatec and Aequitas.  (Id. ¶ 3.)

Salt Lake County Sheriff's Deputy Heinz Kopp, along with a private attorney,[3] went to Yanaki's residence to execute the Discovery Order on April 15, 2002, at 8:00 a.m.  (Am. Compl. ¶ 10.)  Because Yanaki was out of town, Kopp served the Discovery Order on Yanaki's wife, Susan Moss, but she refused to allow Kopp to enter the residence.  (Id. ¶ 11-12, 17.)  After the

---

[1]Facts are taken from the allegations in Plaintiffs' Complaint, all of which the court assumes as true at this stage.

[2]Although none of the parties submitted a copy of the order to the court as an exhibit, a courtesy copy was provided during oral arguments on January 16, 2007.  Judge Medley issued this order, dated April 12, 2002, for Case No. 020903031, in the Third Judicial District for the State of Utah.

[3]The complaint never refers to the "private attorney" by name.

private attorney informed Moss that "[w]e can come in now, or we can come in later" and Kopp told Moss that "[w]e can kick in this door," the attorney left to obtain another civil order while Kopp waited outside Yanaki's home. (Id. ¶¶ 18, 19.) The attorney returned with a "Supplemental Order in Aid of Enforcement" ("Supplemental Order"),[4] signed by Judge Medley. (Id. ¶ 20.)   The Supplemental Order authorized:

> [T]he Salt Lake County Sheriff's Office . . . to enter the residence and home address of Defendant Jamal Yanaki 385 North Wall Street, Salt Lake City, Utah 84103 and use reasonable force, if necessary and appropriate under the circumstances, to execute the Order, including entering through unlocked doors, conducting a search of the premises, and detaining any person who resists the enforcement of the Order.

(Supp. Order at 1-2.)

After seeing the Supplemental Order, and after Kopp informed her she could be detained if she interfered, Moss permitted Kopp to execute the Discovery Order. (Am. Compl. ¶ 22.) Kendra Herlin, a Sergeant in the Sheriff's Office, later arrived at Yanaki's residence and reinforced that Moss could be detained if she impeded the orders. (Id. ¶ 23.)  Kopp then "took the property of Yanaki, Moss, and others."  (Id. ¶ 24.)

Because of this alleged search and seizure, Moss and Yanaki filed a complaint in the United States District Court for the District of Utah on April 14, 2003 ("Yanaki I"), against Iomed, Robert J. Lollini, Mary Crowther, Laura Millar, the law firm of Parr Waddoups Brown Gee & Loveless, Clark Waddoups, Jonathan O. Hafen, Justin P. Matkin, Office Equipment

---

[4]Similarly to the Discovery Order, a courtesy copy of the Supplemental Order was only provided during the January 16, 2007 hearing. Judge Medley also issued this order, dated April 15, 2002, for Case No. 020903031, in the Third Judicial District for the State of Utah.

Associates, Scott L. Johnson, and John Does I through XX (collectively, "Yanaki I defendants").[5] Among other claims, Yanaki and Moss alleged that the Yanaki I Defendants violated their civil rights when they sought and executed Judge Medley's orders. Notably, the Yanaki I defendants were all private parties allegedly involved in the search of Yanaki's home. In this case, however, all Defendants are state officials.

The Honorable Dee Benson granted the Yanaki I defendants' Motion to Dismiss with prejudice under Federal Rule of Civil Procedure 12(b)(6). Yanaki v. Iomed, Inc., No. 2:03-cv-345 & 346, slip op. at 10 (D. Utah Mar. 11, 2004). Specifically, Judge Benson ruled that Moss and Yanaki "failed to plead the element of state action requisite to sustain an action under § 1983." Id. at 9. On appeal, the Tenth Circuit affirmed Judge Benson's ruling, "[b]ecause there is no set of facts under which Plaintiffs can establish that the alleged deprivation of rights was committed under color of state law . . . ." Yanaki v. Iomed, Inc., 415 F.3d 1204, 1210 (10th Cir. 2005).

Subsequently, Moss and Yanaki initiated this action, suing only state officials allegedly involved in the search of Yanaki's home.

## ANALYSIS

**I.   Legal Standard for 12(b)(6) Motion to Dismiss**

The court will grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to state a claim upon which relief can be granted, assuming all well-pleaded factual allegations are true. Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236

---

[5]Initially Moss and Yanaki filed separate complaints which were consolidated into Yanaki I.

(10th Cir. 1999) ("[A]ll well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party" when a court rules on a 12(b)(6) motion to dismiss.). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). Further, a court should consider only the well-pleaded allegations, and not allow conclusory assertions to satisfy the plaintiff's burden. Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1107 (10th Cir. 2005) ("A motion to dismiss for failure to state a claim 'admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.'") (quoting Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976)). Therefore, Defendants' Motions to Dismiss are proper only if Plaintiffs have failed to plead the facts necessary to support a legal claim.

## II.    Defendants' Motions to Dismiss

Defendants' Motions to Dismiss have three bases: (A) this suit is barred by collateral estoppel; (B) the state officials involved in the alleged search and seizure are protected by quasi-judicial immunity; and alternatively, (C) the conduct is protected by qualified immunity. The court will address these in turn.

### A.    Collateral Estoppel Does Not Bar This Lawsuit

Because Moss and Yanaki are suing different Defendants, and because they present a different legal issue from that decided in Yanaki I, this claim is not barred by collateral estoppel.[6]

---

[6]Although Defendants initially asserted res judicata, it appears they now only assert collateral estoppel. At any rate, res judicata does not apply to these new Defendants because the

Specifically, Yanaki I found only that the private parties involved in the search of Yanaki's home did not qualify as state actors. Such a ruling does not, however, resolve whether the state officials allegedly involved in the search acted under color of state law when they executed the Discovery Order and Supplemental Order for the civil matter.

As the Tenth Circuit has explained, collateral estoppel has four elements:

> (1) [T]he issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Frandsen v. Westinghouse Corp., 46 F.3d 975, 978 (10th Cir. 1995).

Elements two and three are clearly satisfied by Yanaki I. That case was finally adjudicated on the merits both by the District Court and the Tenth Circuit. See Yanaki, 415 F.3d 1204; Yanaki, No. 2:03-cv-345 & 346, slip op (D. Utah Mar. 11, 2004). Also, Moss and Yanaki had a full and fair opportunity to litigate that case, as it was ultimately determined by the circuit court. See Yanaki, 415 F.3d at 1210.

But the first element defeats Defendants' collateral estoppel defense because Yanaki I did not determine whether the state officials allegedly involved acted under color of state law.[7]

---

doctrine requires the previous litigation involve the identical parties or parties in privity with the previous litigants. Nwosun v. Gen. Mills Rest., Inc., 124 F.3d 1255, 1257 (10th Cir. 1997) ("Res judicata requires the satisfaction of four elements: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit."). Res judicata fails on the second element because Defendants do not assert that they are in privity with the Yanaki I defendants.

[7]Because this first element is not satisfied, the fourth element – that this issue was fully litigated – cannot be satisfied, even though Defendants have invoked collateral estoppel against

Rather, Yanaki I decided only that the Yanaki I defendants, all private parties, did not act under color of state law. In upholding Yanaki I on appeal, the Tenth Circuit concluded that "[b]ecause Plaintiffs allege nothing more than **'private misuse' of state laws**, their complaint fails to satisfy the first part of the color of law test as announced in Lugar." Id. at 1209 (emphasis added). Distinguishing the actions of the police from the actions of the private parties, the circuit court explained:

> Plaintiffs allege only that Defendants' search of the residence was conducted in concert with the police who were acting pursuant to the orders of the state court, which Plaintiffs admit were unlawful under state law. **The involvement of the police in executing the court-ordered search, without more, does not convert Defendants' abuse of state law into conduct attributable to the state for purposes of § 1983 liability**.

Id. at 1209-10 (emphasis added).

Ultimately, the district and circuit courts in Yanaki I considered only whether the involvement of the police converted the Yanaki I defendants into state actors. Neither court determined whether the state officials themselves qualified as state actors when they executed the orders. The issue of whether the police allegedly involved in the search of Yanaki's home qualify as state actors has not been litigated, and collateral estoppel does not bar Plaintiffs' claim against these Defendants.

### B. Defendants Qualify for Quasi-Judicial Immunity

Defendants qualify for quasi-judicial immunity because they did not exceed their authority and acted pursuant to a facially valid court order. When properly invoked, quasi-judicial immunity serves as an absolute bar to recovery. Guttman v. Khalsa, 446 F.3d 1027,

---

the parties whose claims were dismissed in Yanaki I.

1033 (10th Cir. 2006) ("Absolute immunity bars suits for money damages for acts made in the exercise of prosecutorial or judicial discretion."). As the Tenth Circuit has explained, "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." Valdez v. City & County of Denver, 878 F.2d 1285, 1286 (10th Cir. 1989).

Quasi-judicial immunity springs from the protections which preclude civil liability for judges performing their official duties. Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000) ("[A]bsolute judicial immunity has been extended to non-judicial officers where 'their duties had an integral relationship with the judicial process.'") (quoting Eades v. Sterlinske, 810 F.2d 723, 726 (7th Cir.1987)). While cloaking judges from liability, courts have recognized that judicial immunity must also extend to individuals charged with carrying out judicial orders. Valdez, 878 F.2d at 1288 ("Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process."). Because "it is simply unfair to spare the judges who give orders while punishing the officers who obey them," courts recognize that "[o]fficials must not be called upon to answer for the legality of decisions which they are powerless to control." Id. at 1289. Otherwise, a narrow application of judicial immunity would "allow plaintiffs to bring suit any time a state agent executes a judicial order which does not fulfill every legal requirement [and] would make the agent 'a lightning rod for harassing litigation aimed at judicial orders.'" Turney v. O'Toole, 898 F.2d 1470, 1473 (10th Cir. 1990) (quoting Valdez, 878 F.2d at 1289).

The Tenth Circuit has articulated a four-part test for quasi-judicial immunity. First, the

judge must have authority to issue the underlying order, such that the judge would qualify for judicial immunity. Id. at 1474 ("[A] state official is not absolutely immune from damages arising from the execution of an order issued by a judge acting 'in the clear absence of all jurisdiction.'") (quoting Stump v. Sparkman, 435 U.S. 349, 357 (1978)). Second, the order must be facially valid. Valdez, 878 F.2d at 1286 ("[A]n official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order."). Third, the officer must have authority to carry out the action. Turney, 898 F.2d at 1474 ("[Q]uasi-judicial immunity will not attach to state officials acting 'outside the scope of their jurisdiction.'") (quoting Cok v. Cosentino, 876 F.2d 1, 3 (1st Cir. 1989)). And fourth, the officer must not exceed the order. Id. ("[T]his absolute immunity extended only to acts prescribed by [the] order."). Because all four steps are satisfied here, Defendants qualify for quasi-judicial immunity and their Motions to Dismiss are granted.

### 1. *Judge Medley Acted Pursuant to Statutory Authority*

First, Judge Medley would qualify for judicial immunity for issuing the Discovery Order and the Supplemental Order because he had the requisite statutory authority. Although judges are not immune for judicial acts "'committed in the clear absence of all jurisdiction,'" Whitesel, 222 F.3d at 867 (quoting Henriksen v. Bentley, 644 F.2d 852, 855 (10th Cir. 1981)), "[a] judge does not act in the clear absence of all jurisdiction even if 'the action he took was in error, was done maliciously, or was in excess of his authority.'" Id. (quoting Stump, 435 U.S. at 356-57). Judicial immunity protects a judge "'even if his exercise of authority is flawed by the commission of grave procedural errors.'" Id. (quoting Stump, 435 U.S. at 359).

Accordingly, Judge Medley would qualify for judicial immunity because he issued the

9

Discovery Order and Supplemental Order pursuant to express statutory authority.  The Utah Code empowers every court to "preserve and enforce order in its immediate presence" and to "compel obedience to its judgments, orders, and process."  Utah Code Ann. § 78-7-5.  Judge Medley issued the Discovery Order to prevent the destruction of evidence in litigation before him, and he issued the Supplemental Order to effect the Discovery Order.  Because both orders clearly fall under his statutory authority, he would qualify for judicial immunity.  Consequently, Defendants satisfy the first step of the quasi-judicial immunity analysis.

      2.     *The Discovery Order and the Supplemental Order Were Both Facially Valid*

Second, both the Discovery Order and the Supplemental Order were facially valid.  The Tenth Circuit has limited the facial validity requirement, explaining that an order can be facially valid even if it is erroneous or unlawful.  Turney, 898 F.2d at 1473 ("Even assuming that the order was infirm as a matter of state law, it was facially valid. 'Facially valid' does not mean 'lawful.'  An erroneous order can be valid.") (footnote omitted); Zamora v. City of Belen, 383 F. Supp. 2d 1315, 1326 (D.N.M. 2005) ("And it is irrelevant to the executing officer's absolute immunity from suit under § 1983 if the court order violates a statute, or is erroneous or even unconstitutional, as long as it is 'facially valid.'") (citing Turney, 898 F.2d at 1473).

Plaintiffs contend that the orders were facially invalid because the "Discover [sic] Order was not on its face, either under state or federal law, a valid search warrant."  (Am. Compl. ¶ 14.)  Although Plaintiffs correctly note that the Discovery Order and Supplemental Order were not search warrants, they do not dispute that the orders manifestly satisfied the threshold requirement of judicial approval.  Bernstein v. Roberts, 405 F. Supp. 2d 34, 40 (D.D.C. 2005) ("[C]ourts have never made a distinction in their Fourth Amendment analyses between criminal cases (i.e.,

warrants) and civil cases (i.e., writs). Regardless of a government officer's purpose, under the Constitution, he or she must obtain judicial approval before entering a private home to conduct a search or seizure."). Instead, Plaintiffs urge the court to rule that every court-issued civil order is facially invalid, exposing to civil liability all officers charged with executing a civil order.[8] But judicial approval is not facially invalid simply because it comes in the form of a civil order. See Turney, 898 F.2d at 1472 ("This quasi-judicial immunity applies with full force to a **judicial order** that a person can be detained for mental evaluation.") (emphasis added); Valdez, 878 F.2d at 1288 ("Absolute immunity for officials assigned to carry out a **judge's orders** is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel.") (emphasis added). The court rejects Plaintiffs' argument that the orders are facially invalid simply because they are not search warrants. Accordingly, Defendants satisfy the second step of the quasi-judicial immunity analysis because both the Discovery Order and the Supplemental Order are facially valid.

    3.    *Defendants Acted Pursuant to Their Authority*

Third, Defendants Kopp and Herlin had the authority to carry out the orders, and may have faced contempt charges for failing to do so. See Utah Code Ann. § 78-32-1 ("The

---

[8] Plaintiffs rely heavily on Specht v. Jensen, 832 F.2d 1516 (10th Cir. 1987), to establish that Defendants violated the Fourth Amendment when they entered Plaintiffs' home with the Discovery Order and the Supplement Order as opposed to a search warrant. But the defendants in Specht did not assert quasi-judicial immunity in their appeal from a jury verdict. Rather, it appears the Specht defendants preempted their potential claim of quasi-judicial immunity by misrepresenting and exceeding the scope of the writ at issue. See id. at 1520 ("[Police officer] stated that he had a search warrant to seize a stolen computer" even though the document was actually a writ of assistance.). Because Specht did not consider whether quasi-judicial immunity attaches to a police officer's carrying out a facially valid civil writ, the case does not guide the court in this matter.

following acts or omissions in respect to a court or proceedings therein are contempts of the authority of the court: . . . Misbehavior in office, or other willful neglect or violation of duty by an attorney, counsel, clerk, sheriff, or other person appointed or elected to perform a judicial or ministerial service [or] . . . Disobedience of any lawful judgment, order or process of the court."). Plaintiffs do not contend or allege to the contrary, so the court finds that Defendants Kopp and Herlin acted pursuant to their authority.

Further, because Kopp and Herlin acted within their authority, Plaintiffs cannot establish that Defendants Salt Lake County or Kennard are responsible for conduct in excess of authority. Accordingly, the third step of the analysis is satisfied for all Defendants.

    4.    *Defendants Did Not Exceed Judge Medley's Orders*

Fourth, because the Amended Complaint does not effectively allege that Defendants exceeded the Discovery Order or the Supplemental Order, the fourth step of the analysis is satisfied. The court analyzes the actions of each Defendant separately because the Amended Complaint alleges different conduct for each Defendant.

**Defendant Kopp**

The Amended Complaint fails to allege with particularity that Defendant Kopp exceeded Judge Medley's orders. Plaintiffs allege that Moss succumbed to the "illegal threat of having Kopp 'detain' her if she interfered with the illegal search and seizure." (Am. Compl. ¶ 22.) Significantly, according to the Amended Complaint, this alleged threat came <u>after</u> the Supplemental Order had authorized the Salt Lake County Sheriff's Office to "detain[] any person who resists enforcement of the [Discovery] Order." (Supp. Order at 2.) The allegation suggests only that Kopp adhered to the Supplemental Order, and undoubtedly acted within the scope of

that order.

The Amended Complaint also alleges that "Kopp took the property of Yanaki, Moss, and others without the consent of any of them to, on information and belief, the place of business of one of the private citizens." (Am. Compl. ¶ 24.) Even assuming this allegation is true, as the court must do, the mere fact that Kopp took some property which did not belong to Yanaki does not adequately establish that Kopp exceeded the Discovery Order. When naming which items were to be seized from Yanaki, Judge Medley included items in Yanaki's possession, custody or control. Specifically, the Discovery Order authorized the Salt Lake County Sheriff's Office to:

> [T]ake custody of each of the hard drives in one or more computers, of other electronic storage media, including specifically but not limited to ZIP drives and CD ROMS, and of the electronic day planner (a Palm Pilot) **in the possession, custody, or control of Defendant Jamal Yanaki** . . . at the above address or addresses . . . [and] recover any Iomed confidential files **in Yanaki's possession, custody or control**, including but not limited to files relating to Ceramatec and Aequitas . . . .

(Discovery Order ¶¶ 3(a), 3(d)) (emphasis added). Plaintiffs do not allege that any of the property taken was not within Yanaki's "possession, custody or control." On the contrary, Plaintiffs assert that all items were taken from Yanaki's residence, suggesting that all items were in fact in Yanaki's possession, custody or control.

Further, Plaintiffs have not alleged that Kopp seized anything beyond the items enumerated by the Discovery Order.[9] Instead, the Amended Complaint relies on the

---

[9]The Amended Complaint also alleges that "the things to be seized were not described with particularity." (Am. Compl. ¶ 26.) Because the Discovery Order specifically enumerates and describes the exact items to be taken from a precise address, this argument is without merit. U.S. v. Brooks, 427 F.3d 1246, 1251 (10th Cir. 2005) ("We have simply held that officers must describe with particularity the objects of their search.").

conclusory allegation that Kopp took property belonging to Moss and to others to establish that Kopp exceeded the Discovery Order.[10]  But such ambiguous allegations are not sufficient to defeat a motion to dismiss.  See Elliott Indus. Ltd. P'ship, 407 F.3d at 1107 ("A motion to dismiss for failure to state a claim 'admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.'") (quoting Mitchell, 537 F.2d at 386).  Even if Kopp seized items belonging to Moss or others, the Amended Complaint does not allege that these items fell beyond the purview of the Discovery Order.  Accordingly, Plaintiffs do not effectively allege that Kopp exceeded the orders, so he satisfies the fourth step of the analysis.

**Defendant Herlin**

The Amended Complaint alleges only that Defendant Herlin adhered to the Supplemental Order, and thus Plaintiffs fail to allege that she exceeded the scope of Judge Medley's orders.  Specifically, Plaintiffs allege that after the Supplemental Order had been served, Herlin "reinforc[ed] Kopp's illegal threat to 'detain' Moss if she attempted to stop the illegal search and seizure."  (Am. Compl. ¶ 23.)  Much like Kopp, the allegation claims that Herlin correctly informed Plaintiffs what the Supplemental Order authorized.  The Amended Complaint does not make any other allegation about Herlin's conduct.  Plaintiffs have not alleged that Herlin exceeded the scope of Judge Medley's orders, so Herlin satisfies the fourth step of the quasi-judicial immunity analysis.

---

[10]It is not clear who constitutes "others" in the Amended Complaint. Notably, the "others" apparently opted not to sue as Moss and Yanaki are the only Plaintiffs in this action.  Because neither Moss nor Yanaki has asserted standing to sue on the behalf of "others," this court will only consider the alleged violations of Moss and Yanaki's civil rights.

Therefore, Defendants Kopp and Herlin have satisfied each of the four steps required to invoke quasi-judicial immunity, and are both immune from this lawsuit. The court grants the Combined Motion to Dismiss by Defendants Kopp and Herlin.

**Defendants Salt Lake County and Kennard**

The Amended Complaint alleges no conduct by either Defendant Kennard or Salt Lake County that differs from Defendants Kopp and Herlin. (See Am. Compl. ¶¶ 15, 20, 29-32, 34, 36-41, 43.) Because Kopp and Herlin have been dismissed from this suit, the claims against Defendants Salt Lake County and Sheriff Aaron Kennard are necessarily dismissed. Accordingly, Plaintiffs have not alleged that Kennard or Salt Lake County engaged in conduct not protected by quasi-judicial immunity.

Furthermore, the Amended Complaint alleges the conduct of Kopp and Herlin demonstrates an unlawful underlying policy endorsed by Defendants Kennard and Salt Lake County. (See id. ¶¶ 6, 45-47). But these allegations rest entirely on the notion that the conduct of Kopp and Herlin manifests a policy that Defendants Kennard and Salt Lake County purportedly endorse. Since Kopp and Herlin simply executed Judge Medley's facially valid orders, their conduct cannot serve as the basis to prove a policy of unconstitutionality. Therefore, Defendants Kennard and Salt Lake County's Motions to Dismiss are also granted.

    C.    <u>The Court Need Not Address Defendants' Qualified Immunity</u>

Having dismissed the claims against all Defendants on other grounds, the court need not consider Defendants' qualified immunity status.

**ORDER**

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED.

DATED this 16th day of February, 2007.

> BY THE COURT:
>
> *Tena Campbell*
>
> TENA CAMPBELL
> Chief Judge